**UNITED STATES**

v.

**Technical Sergeant Leslie
A. TORRANCE, United
States Air Force.**

**ACM 37544**

U.S. Air Force Court of Criminal Appeals

Sentence adjudged 25 August 2009 by
GCM convened at Elmendorf Air
Force Base, Alaska.

26 April 2013

Appellate Counsel for the appellant: Lieutenant Colonel Gail E. Crawford; Lieutenant Colonel Darrin K. Johns; Major Shannon A. Bennett; Major Reggie D. Yager; Major Bryan A. Boner; Major Anthony D. Ortiz; and Dwight H. Sullivan, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Jeremy S. Weber; Major Deanna Daly; Major Naomi N. Porterfield; Captain Erika L. Sleger; and Gerald R. Bruce, Esquire.

Before ROAN, MARKSTEINER, and HECKER, Appellate Military Judges.

## OPINION OF THE COURT

HECKER, Judge:

A general court-martial composed of a military judge convicted the appellant, consistent with his pleas, of one specification of knowingly using an interactive computer service for the carriage in interstate commerce of obscene, lewd, lascivious, or filthy pictures or other matter of indecent character, in violation of 18 U.S.C. § 1462, as incorporated under Article 134, UCMJ, 10 U.S.C. § 934. The appellant was sentenced to a bad-conduct discharge, 12 months of confinement, and reduction to the grade of E–1. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, 6 months of confinement, and reduction to the grade of E–1. On appeal, the appellant asserts that he was denied the effective assistance of counsel and that his bad-conduct discharge should be set aside due to excessive post-trial delay. Finding no error, we affirm.

*Background*

After the appellant's wife found Internet links to pornographic material on his personal computer in January 2008, she confronted him and demanded he leave their residence. Subsequently, the appellant admitted to a fellow military member that he had an addiction to pornography, his wife had caught him looking at "pretty sick" materials, and he

Military Judge: David S. Castro (sitting alone).

knew his career and marriage were over because of what he had done. Becoming suspicious the appellant had been viewing child pornography, the military member told him he needed to report to the on-base mental health clinic for treatment.

Two days later, the appellant met with a military mental health provider to seek assistance with his pornography addiction. After asking about the limits of confidentiality and being told illegal behaviors must be reported, the appellant admitted viewing "obscene pictures" on his home computer over the past six months. The mental health provider immediately notified agents from the Air Force Office of Special Investigations (AFOSI). Shortly thereafter, AFOSI agents, with consent from the appellant's wife, searched the appellant's off-base residence and seized his computer. Later that same day, the appellant, with the assistance of the local Area Defense Counsel, notified AFOSI that he was revoking the consent. Several months later, the agents proceeded with their search of the contents of his computer.

Forensic testing of the seized computer indicated someone had used a search engine to search the Internet for pornographic materials, using search terms for adult pornography as well as terms such as "teen porn," "child incest," "preteen intercourse," and "teen proscribed content." These searches yielded a list of websites where media could be viewed or downloaded. Although the images were not saved on the computer, they were automatically stored in temporary internet files (TIFs) once they were viewed in the web browser. In those TIFs, the investigators found hundreds of images of an obscene nature on the appellant's computer, with approximately 225 depicting children (mostly in the form of thumbnail images). Two of those images matched known children who had been identified by the National Center for Missing and Exploited Children (NCMEC).

The Government initially referred one charge, including nine specifications, each alleging wrongful possession of one image of child pornography. Concerned about having to register as a sex offender, the appellant entered into a pretrial agreement (PTA) with the Government. As part of that PTA, the Government withdrew the initial charge and specifications and preferred a new charge with one specification alleging a violation of the federal obscenity statute, 18 U.S.C. § 1462. The specification stated the appellant:

> Did, at or near Anchorage, Alaska, between on or about 8 June 2006 and on or about 14 January 2008, knowingly bring into the United States, or a place subject to the jurisdiction thereof, or knowingly use an interactive computer service for carriage in interstate or foreign commerce, obscene, lewd, lascivious, or filthy pictures or other matter of indecent character, in violation of [18 U.S.C. § 1462].

The elements of this offense, as instructed by the military judge, were: (1) The appellant knowingly brought into the United States or used an interactive computer service for carriage in interstate commerce, certain obscene, lewd, lascivious, or filthy pictures of an indecent character, in violation of 18 U.S.C. § 1462; (2) The appellant knew the material contained obscene pictures; and (3) The importation of the obscene material was wrongful. For the definition of "lascivious," the military judge used the same instruction from Department of the Army Pamphlet (D.A. Pam.) 27–9, *Military Judges' Benchbook* (1 January 2010), utilized in child pornography cases. He also instructed the appellant to "focus on minors" in his guilty plea inquiry and exclude adult pornography as "whatever you view with respect to adults is fair game for anybody." The appellant then admitted he had knowingly and wrongfully used the Internet to find and view images of minors posed in a provocative manner. He agreed that the two images verified by NCMEC met the definition of "obscene, lewd, lascivious, and/or filthy" under the federal statute, as did other images of children based on how they were dressed and/or posed.

When asked by the military judge whether the charged offense was one of those listed in Department of Defense Instruction (DoDI) 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority,* Enclosure 27 (17 July 2001, incor-

porating Change 1, 10 June 2003), as requiring sex offender processing, the trial counsel said he believed the Government would have to report the conviction to the states because of the DoDI's reference to notification being required for offenses of child pornography and crimes of a sexual nature involving minors. The appellant's civilian defense counsel, Mr. SK, responded that the charge did not necessarily require reporting to the states as its language did not reference the involvement of children in the offense. Both attorneys agreed each state, upon receiving any such report from the military, would determine whether the appellant was required to register as a sex offender.

Noting his main focus was to ensure that the accused was making a "fully informed decision" before pleading guilty regardless of what decisions were ultimately made by the Government or the states, the military judge asked whether defense counsel had advised the accused prior to trial of the "sex offender reporting and registration requirements resulting from a finding of guilty of this offense." The civilian defense counsel again said the defense counsel had explained to the appellant their belief the states would not require registration for this offense but ultimately it would depend on the state.

After the military judge asked whether the appellant was willing to plead guilty with sex offender registration as a "possibility," the civilian defense counsel conferred with the appellant and then stated the appellant "is aware of the potential consequence and is still willing to move forward with his guilty plea." The appellant agreed with this representation. Upon the direction of the military judge, the appellant conferred with both counsel and then, while crying, told the military judge "I still intend to plead guilty." The military judge then accepted his guilty plea.

Immediately following the court-martial, the trial counsel signed an Air Force Form 1359, *Report of Result of Trial* (1 September 1995). That form indicated "sex offender notification [was] required" and was served on the appellant and his defense counsel as an attachment to the Staff Judge Advocate Review. The defense did not mention sex offender notification or registration in its clemency submissions.

In January 2010, four months after his trial and shortly before his release from confinement, the appellant was notified by confinement personnel via a Department of Defense Form 2791, *Notice of Release/Acknowledgement of Convicted Sex Offender Registration Requirements* (April 2003), that, given his planned move to Arkansas, authorities there would be notified of his pending release as an "offender [who] is subject to sex offender registration under Federal law." The appellant was required to "acknowledge ... [he] was informed that upon [his] release from confinement ... [he is] subject to registration ... as a sex offender ... in any state [or U.S.] territory in which [he] will reside, be employed, carry on a vocation, or be a student." He also acknowledged that military officials would inform state officials that he was being released, "the offense of which [he] was convicted, and that [he was] subject to a registration requirement as a sex offender."

According to information submitted by the appellant on appeal, the Arkansas Crime Information Center registered the appellant as a sex offender in March 2010 based on a "charge" qualifying for "out of state sex offender registration received from the Air Force," and indicating he was "originally charged with possession of obscene material[.] The subject was in possession of obscene images on [the] computer."

On appeal, the appellant contends he received ineffective assistance of counsel at his trial. He contends, inter alia, his trial defense counsel had a duty to correctly advise him about sex offender registration, and telling him it was only "possible" he may have to register as a sex offender constituted deficient performance, because it was actually "certain" he would have to register if he was convicted of the federal obscenity statute. In contrast, the Government argues the consequence of registration here was "uncertain" and thus the trial defense counsels' advice, both before and at trial, that such registration was "possible" constituted effective advice.

*Ineffective Assistance of Counsel*

 We review de novo claims of ineffective assistance of counsel, including when an appellant challenges a guilty plea on those grounds. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *United States v. Sales,* 56 M.J. 255, 258 (C.A.A.F. 2002). Service members have a fundamental right to the effective assistance of counsel at trial by courts-martial, including as they are deciding whether to plead guilty to an offense. *United States v. Rose,* 71 M.J. 138, 143 (C.A.A.F.2012) (citing *Missouri v. Frye,* — U.S. ——, 132 S.Ct. 1399, 1405, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper,* — U.S. ——, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012); *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1480–81, 176 L.Ed.2d 284 (2010)). To establish ineffective assistance of counsel, the appellant "must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green,* 68 M.J. 360, 361 (C.A.A.F.2010) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009)). In evaluating counsel's performance under the first *Strickland* prong, appellate courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052. The appellant must establish that the "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter,* — U.S. ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

*Defense Counsel Advice on Sex Offender Registration*

The Supreme Court has held that counsel's failure to provide a client with available advice about deportation, a consequence closely connected to the criminal process, "clearly satisfies the first prong of the *Strickland* analysis." *Padilla,* 130 S.Ct. at 1484 (citation omitted). The consequences of sex offender registration is no less significant than deportation, particularly given: (1) the public nature of registered offender lists; (2) the fact that every state in the union has some such requirement; (3) the common restrictions on where those registered may reside within any given community; and (4) the length of time that most offenders are required to remain registered. Indeed, our superior court implicitly recognized the significant impact of this consequence in *United States v. Miller,* 63 M.J. 452, 459 (C.A.A.F. 2006), and has recently held that, in the context of a guilty plea, sex offender registration requirements are a direct, and thus not a collateral, consequence of a guilty plea. *United States v. Riley,* 72 M.J. 115 (C.A.A.F. 2013).

In order to promote a professional dialogue between an accused and his trial defense counsel and to "foster [the] accused's proper consideration of this unique … circumstance that may affect [his] plea decisions as to any offense that would trigger a sex offender registration requirement," *Miller* established a prospective rule "to address the importance of trial defense counsel explaining the sex offender registration requirement to an accused." *Miller,* 63 M.J. at 459. The Court recognized that such information "may [be] helpful to [an accused] in understanding the consequences of his guilty plea, in accepting those consequences, and in pleading guilty." *Id.* at 458. Therefore, for all cases tried after November 2006, *Miller* requires defense counsel to inform the accused prior to trial "as to any charged offense listed on [DoDI 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority,* and] … state on the record that he has complied with this requirement." *Id.* at 459. To do this, defense counsel must "be aware of the federal statute [1] [that requires] mandatory report-

---

1. At the time *United States v. Miller,* 63 M.J. 452, 459 (C.A.A.F.2006), was decided, the operative federal law was the Wetterling Act, originally enacted in 1994 and amended multiple times, with the collective result codified at 42 U.S.C. §§ 14071–073. It was subsequently repealed, effective 27 July 2009. The current federal statute is the Sex Offender Registration and Notification

ing and registration for those who are convicted of offenses within the [statute's] scope," as well as DoDI 1325.7, "which identifies offenses that trigger mandatory sex offender reporting." *Id.*

Our superior court noted "[t]he operation of this statute and instruction may have an impact on an accused's decisions both before and at trial, and on an accused's legal obligations after conviction." *Miller*, 63 M.J. at 459. Failure to advise an accused on such matters after *Miller*, while not per se ineffective assistance, is one circumstance to be considered in measuring counsel's performance. *Id.* at 460. "[W]hether registration was raised, how it was raised, and in what manner [the appellant] was advised about registration" is relevant context for counsel's advice. *United States v. Rose*, 68 M.J. 236, 237 (C.A.A.F.2009) (mem.). Not every failure by a defense counsel to advise an accused (or answer his request for information) on the issue of sex offender registration will rise to the level of deficient performance under the strict *Strickland* standard. *Miller*, 63 M.J. at 458; *Rose*, 71 M.J. at 143–44. Furthermore, it is not necessary for defense counsel to "become knowledgeable about the sex offender registration statutes of every state." *Miller*, 63 M.J. at 459. If the consequences are unclear or uncertain, the defense counsel need only advise the client that the pending criminal charge may carry a risk of this adverse consequence. However, when the consequence is clear, the duty of the counsel to give correct advice is also clear. *Padilla*, 130 S.Ct. at 1483 (finding deficiency in counsel's conduct when the consequences of the guilty plea could easily be determined from reading the relevant statute on deportation).

*Information Provided on Appeal regarding Offender Registration*

Declarations submitted on appeal by the appellant and both of his trial defense counsel (military and civilian) provide additional information about events prior to and at trial. The declarations make clear the appellant was very concerned about having to register as a sex offender. He repeatedly brought up the issue during their case preparation. According to the declaration of Captain (Capt) NM, the appellant's area defense counsel, the appellant was adamant that he did not want to plead guilty to an offense if he would have to register.

After the Government charged the appellant with nine specifications of possessing child pornography, Capt NM advised the appellant that a guilty finding on any of these specifications would require sex offender registration and the "only sure way to not register" was to plead "not guilty" and win at trial. To avoid the possibility of registration, the appellant conducted his own research into the issue. After finding a court decision indicating a conviction under the federal obscenity statute, 18 U.S.C. § 1462, did not qualify as a registerable offense, the appellant brought this statute to the attention of defense counsel and asked about the possibility of pleading guilty to that charge.

According to their declarations, Mr. SK and Capt NM both looked at this statute and then discussed it with the appellant. Mr. SK told the appellant that, since the offense had no element involving minors, it appeared he would not have to register if he pled guilty to this offense. Capt NM told the appellant he did not know if a guilty plea to the obscenity statute would result in registration but, in his opinion, the legal office was not required by Air Force Instruction (AFI) 51–201, *Administration of Military Justice* (25 October 2012), to report his conviction to state and local authorities but could decide to do so. He further advised the appellant, if such a report was sent by the military, it did not automatically require him to register because each state uses its own laws to make the registration determination.

Act ("SORNA"), enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act, 42 U.S.C. §§ 16901–991, after multiple high-profile crimes committed against the public by previously-convicted sex offenders led Congress to recognize the lack of uniformity among the state programs and the ineffective operation by the States had created gaps and loopholes that made it possible for many sex offenders to avoid registration by moving between jurisdictions. *Carr v. United States*, 560 U.S. 438, 130 S.Ct. 2229, 2240, 176 L.Ed.2d 1152 (2010).

Based on the possibility the appellant would move to Arkansas after his release from confinement, Capt NM researched Arkansas case law and statutes, as well as other resources involving offender registration. He advised the appellant that the Arkansas law was unclear on whether he would have to register as a sex offender, even if the Air Force reported his conviction to the state. His research indicated state authorities conduct hearings to determine the appropriateness of registration when the situation is unclear, and he advised the appellant he would probably fall into that category. Mr. SK told the appellant he could not predict what Arkansas would require as far as registration and agreed with Capt NM that the state law was unclear.[2] He also advised the appellant that registration would depend on how each state handled his conviction.

According to his declaration, the appellant asked Mr. SK to see if the Government would accept a guilty plea "in exchange for removing any sex offender registration requirement." Mr. SK followed up on that request, although neither of the defense counsel declarations provide any details about their conversations with the Government regarding offender registration or the charges. However, the week prior to trial, the defense submitted a PTA which was subsequently accepted by the convening authority, wherein the Government agreed to withdraw the child pornography specifications and substitute an 18 U.S.C. § 1462 specification, while the appellant agreed to waive the new Article 32, UCMJ, 10 U.S.C. § 832, hearing, plead guilty, waive his right to trial by members, forfeit all waivable motions, and not request any expert witnesses. The PTA did not contain any cap on the sentence.

According to Capt NM, by this point, the appellant knew he would definitely have to register if he was found guilty of any of the original child pornography specifications, but understood there was a chance he would not have to register if he pled guilty to transporting obscene material under 18 U.S.C. § 1462. Although Capt NM was certain that the appellant would not have pled guilty if he knew he definitely would have to register as a result of the guilty plea, he said the appellant "carefully weighed" the risk of being convicted of the child pornography charge against the risk that the state he moved to would require him to register if he pled guilty under the federal obscenity statute, and then he decided to offer the PTA.[3] Mr. SK's declaration said both counsel told the appellant they did not think he would have to register and that pleading guilty to possession of obscene images was the "safest choice" considering his alternatives. The declarations of counsel indicate they provided similar advice to the appellant when he conferred with them during the guilty plea inquiry itself.

In contrast, in his declaration, the appellant asserts his defense counsel: (1) told him the Government had removed any registration requirement when it agreed to change the charges as part of his PTA and therefore registration had been "taken off the table," and (2) repeatedly told him he would not have to register under this plea agreement. We note the accused "bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F.2007) (citation omitted). Even if there are opposing affidavits raising a factual dispute that is "material" to the resolution of the post-trial claim, we can resolve the claim without a fact-finding hearing if an assessment of the appellate filings (apart from the conflicting declarations) and the record as a whole compel-

---

2. Mr. SK also told the appellant he did not believe registration would be required in Texas (where Mr. SK was licensed).

3. In response to the appellant's repeated queries about the likelihood of success at trial, Captain NM advised he had a good chance of being found guilty of at least some of the specifications, especially if the defense lost its motion to suppress the statements he made to the mental health provider on the basis they were made in further-

ance of treatment. He also advised the appellant the defense had a "serious chance" of prevailing in that motion and, if that occurred, they had a "winnable case" at trial. Unfortunately for the appellant, however, a computer expert retained by the defense found some previously unknown but harmful information which made it likely the appellant would be found guilty of at least several of the specifications.

lingly demonstrate the improbability of the facts alleged by the appellant. *United States v. Ginn*, 47 M.J. 236, 244–45, 248 (C.A.A.F. 1997); *United States v. Fagan*, 59 M.J. 238, 243 (C.A.A.F.2004).

The appellant's claims are belied by the transcript itself, which clearly shows it is highly improbable the appellant was told registration was no longer a possibility once he signed the PTA. First, the terms of the PTA itself do not include that provision, and the appellant told the military judge the written agreement contained all of his agreements with the Government and no other inducements had been made which affected his offer to plead guilty. Second, after he heard the trial counsel say the Government would likely be reporting his conviction to the states for potential registration, he did not tell the military judge or his defense counsel that this would violate his purported agreement with the Government. Third, his emotional reaction to the military judge's warning that registration was a "possibility" if he pled guilty is not consistent with someone who has been assured such registration will not occur, nor did he tell the military judge of any disconnect between his counsel's advice and the military judge's statements. Furthermore, when the appellant sent emails to his civilian defense counsel after he learned he was required to register in Arkansas, he did not say anything about the Government failing to keep its end of the alleged bargain or about his defense counsels' assurances not being correct.[4] We also note that the report of result of trial prepared by the trial counsel and served on the appellant as part of the post-trial process expressly stated "sex offender notification required," yet he did not alert the Government that such action violated its agreement. We find the appellate filings and the record as a whole compellingly demonstrate the improbability of the appellant's claims, and we will evaluate the ineffective assistance of counsel claim accordingly.

*Federal Law on Sex Offender Registration*

Under *Miller*, the appellant's defense counsel were required to be aware of the federal statute addressing the mandatory reporting and registration requirements for certain sex offenders. The current federal law is the Sex Offender Registration and Notification Act ("SORNA"), enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act. *See* 42 U.S.C. §§ 16901–991. This law imposes requirements on covered sex offenders, including those convicted of certain offenses under the UCMJ.[5]

Such offenders must "register, and keep the registration current, in each jurisdiction where the offender resides, ... is an employee, [or] ... is a student" and appear in person periodically to "allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered." 42 U.S.C. §§ 16911(1), (5)(A)(iv) and 16913(a)-(c), 16916 (2006); *Reynolds v. United States*, —— U.S. ——, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012); *Carr v. United States*, 560 U.S. 438, 130 S.Ct. 2229, 2241–42, 176 L.Ed.2d 1152 (2010). If a covered military offender fails to register as required by SORNA, he faces federal prosecution with a

---

4. According to the appellant's declaration, at his request, Mr. SK contacted the legal office about this development and was told they had decided to require the registration based on the evidence in the case. The appellant's declaration further states both he and Mr. SK contacted an individual at the Arkansas Crime Information Center who told them Arkansas law required the appellant to be registered as a sex offender because the military told them it was a registerable offense and Arkansas was required to register anyone who is registerable in another jurisdiction.

5. Although Congress gave the states time to implement the SORNA, these particular requirements took effect immediately upon enactment of SORNA and apply whether or not the particular state has completed its full implementation of SORNA's requirements. 72 Fed.Reg. 8894, 8895 (Feb. 28, 2007) (to be codified at 28 C.F.R. pt. 72); 73 Fed.Reg. 38,030, 38,063 (July 2, 2008). To date, circuit courts have been unanimous that sex offenders in states that have not yet implemented SORNA can still be convicted for failing to register in those states as required by SORNA. *See e.g. United States v. George*, 625 F.3d 1124, 1128 (9th Cir.2010), *vacated on other grounds*, 672 F.3d 1126 (9th Cir.2012); *United States v. Guzman*, 591 F.3d 83, 93 (2d Cir.2010); *United States v. Pendleton*, 636 F.3d 78, 86 (3rd Cir. 2011); *United States v. Yelloweagle*, 643 F.3d 1275, 1276 (10th Cir.2011); *United States v. Voice*, 622 F.3d 870, 879 (8th Cir.2010); *Kennedy v. Allera*, 612 F.3d 261, 268 (4th Cir.2010).

penalty that includes ten years imprisonment and a fine of up to $250,000. 18 U.S.C. § 2250(a); *Reynolds,* 132 S.Ct. at 978; *Carr,* 130 S.Ct. at 2238, 2240.

### Covered Military Offenses

SORNA requires the registration of individuals convicted of a "military offense specified by the Secretary of Defense." 42 U.S.C. § 16911(5)(A)(iv). Accordingly, Congress directed the Secretary to "specify categories of conduct punishable under the Uniform Code of Military Justice which are sex offenses as that term is defined in [the federal registration law] and such other conduct as the Secretary deems appropriate for inclusion for [this] purpose[ ]." Reviser's Note 10 U.S.C. § 951. Congress initially established this requirement through the Wetterling Improvement Act of 1997, and the Secretary of Defense first promulgated Enclosure 27 to DoDI 1325.7 in 1999.[6] *See The Judiciary, Caveat,* THE REPORTER, Dec. 2003, at 16–17. (*Miller* also requires defense counsel to be familiar with this instruction.)

Although the federal law did not require registration for child pornography offenses until 2003, the Department of Defense has included such a requirement since 1999. Specifically, the applicable version of DoDI 1325.7 as of the date of the appellant's court-martial lists "pornography involving a minor," punishable under Article 134, UCMJ, as an "offense[ that] triggers requirements to notify state and local law enforcement agencies and to provide information to inmates concerning sex offender registration requirements." DoDI 1325.7, Enclosure 27.[7]

As required by federal law since 1997, the DODI also required DOD correctional facility commanders to provide notice to covered military sex offenders that the offender is "subject to a registration requirement as a sex offender in any State in which the person resides, is employed, carries on a vocation, or is a student." The DODI also implements SORNA's requirement that these commanders provide written notice of the offender's release to state and local law enforcement authorities where the offender will reside. DoDI 1325.7, ¶ 6.18.6. *See also* 10 U.S.C. § 951.

### Application of Federal Registration Law and DoDI 1325.7 to the Appellant

▮▮▮▮▮ When considering the DoDI in conjunction with the federal law, it is clear that a military member convicted of an offense listed in the DoDI is required to register in his state of residence, employment, or study and faces criminal prosecution by the federal Government for failing to do so. If it is unclear or uncertain this consequence will occur, the trial defense counsel's advice to the appellant that his guilty plea "may" carry a risk of registration is correct, but if it is clear the appellant will incur this consequence, the duty of the counsel to advise him accordingly is also clear. *Padilla,* 130 S.Ct. at 1483.

The appellant pled guilty to importing or transporting obscene materials pursuant to 18 U.S.C. § 1462, an offense that is not listed by that name or specific title in the DoDI. The obscene materials in the case were, however, images of child pornography, and the DoDI at the time of his trial did include the

---

6. In December 1998, the Assistant Secretary of Defense issued a directive-type memorandum to implement the Wetterling Act's requirements. A year later, this information was incorporated as the first Enclosure 27 of Department of Defense Instruction (DoDI) 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority* (17 July 2001, incorporating Change 1, 10 June 2003).

7. Enclosure 27's list of registerable offenses remained unchanged between 1999 and 2009. On 16 November 2009 (three months after the appellant's court-martial), the Under Secretary of Defense for Personnel and Readiness issued a post-SORNA memorandum to "specifically revise[ ] the list of reportable sex offenses currently found in enclosure 27 of the DODI," in order "to com-

ply with changes to Federal law, including recent changes to the [UCMJ]" (an apparent reference to changes to Article 120, UCMJ, 10 U.S.C. § 920, that took effect on 1 October 2007). The memorandum also included an updated list of covered offenses, including any Article 134, UCMJ, offense that "involves possession, production, or distribution of child pornography," mirroring the language from SORNA. To date, DoDI 1325.7 itself has not been updated to reflect the changes made by this memorandum. The Air Force, however, updated Air Force Instruction 51–201, *Administration of Military Justice,* § 13K, Figure 13.4 (25 October 2012), which reflects the changes through an interim change made on 3 February 2010.

offense of "pornography involving a minor" as one requiring registration. The Secretary of Defense designated that offense as such when he was directed in 1997 to "specify categories of conduct punishable under the [UCMJ] which are sex offenses as that term is defined in [the federal registration law] and such other conduct as the Secretary deems appropriate for inclusion for [this] purpose[ ]." As this was done four years before federal law listed child pornography as a registerable offense, it appears the Secretary designated this as an offense because it was "conduct he deemed appropriate" for registration. The Secretary has never designated conduct involving "obscenity" as a registerable offense.

Based on guidance issued by the Air Force Military Justice Division, the title of the offense would appear to be dispositive. This guidance was published in February 2009, six months prior to the appellant's court-martial, and noted the division "had been asked about accepting an offer to plead guilty for the purpose of avoiding registration requirements." *See* Lieutenant Colonel Eric Mejia, *Military Justice Pointers,* THE REPORTER, Spring 2009, at 18 (also published on the Air Force's internal FLITE website in February 2009). Using the example of an accused pleading guilty to indecent exposure instead of indecent liberties, the article advised:

> The general objective of the registration requirement is to assist law enforcement and protect the public from convicted child molesters and violent sex offenders. In our opinion, accepting the plea is not acceptable if the purpose is to defeat the application and intent of the legislation. However, accepting the plea may be appropriate if, for example, it is not possible to prove an element of the charged offense.

*Id.* Notably, this guidance did not say that such an accused's actual conduct (taking indecent liberties with a child) would make him registerable even if he pled guilty to an offense not on the DoDI list (indecent exposure). To the contrary, it implied that such

an offender would *not* have to register if he pled guilty to indecent exposure, regardless of the nature of his underlying conduct. We have a similar situation here. The material possessed by the appellant was "pornography involving a minor" but he technically did not plead guilty to such an "offense," and his obscenity offense is not on the DoDI list.

The Military Judges' Benchbook also indicates the title of the offense is dispositive, as opposed to the underlying facts of the accused's misconduct. Following *Miller,* the Benchbook was amended to include guidance to military judges on how to comply with its requirements, directing the military judge to ask the defense counsel about sex offender registration "[i]f the accused has pleaded guilty to an offense *listed in [DoDI] 1325.7, Enclosure 27.*" D.A. Pam. 27–9, ¶ 2–2–8 (emphasis added). Although the Benchbook is not binding, it is intended to ensure compliance with current law and our superior court recently held this language accurately reflects the *Miller* and *Padilla* line of cases regarding sex offender registration. *Riley,* 72 M.J. at 121–22.

Information from the Department of Justice about SORNA's requirements is not clear on whether the title of the offense or the underlying conduct is dispositive in determining if someone's offense is registerable. Three years prior to the appellant's trial, Congress had defined a registerable "sex offense" as including "an offense against a minor that involves . . . possession, production, or distribution of child pornography." 42 U.S.C. §§ 16911(5)(A)(ii) and (7)(G).[8] When promulgating the guidelines for the states on how to implement and comply with this requirement within their own criminal codes, the Attorney General indicated this section required registration "for offenses whose *gravamen* is creating or participating in the creation of sexually explicit visual depictions of persons below the age of 18, making such depictions available to others, *or having or receiving such depictions.*" 73 Fed.Reg. 38052 (emphasis added).[9] The "gravamen"

---

8. This requirement was not added to DoDI 1325.7 until the issuance of the November 2009 memorandum referenced in footnote 7.

9. The guidelines promulgated by the Attorney General in July 2008 also noted that individuals whose registration offense is "the receipt or possession of child pornography" are classified with-

of the appellant's obscenity offense could be considered "having sexually explicit depictions of persons below the age of 18." The same guidelines, however, advised the states that, when assessing how to place an offender within the SORNA tiers, "jurisdictions generally may premise the determination on the elements of the offense, and are not required to look to underlying conduct that is not reflected in the offense of conviction." 73 Fed.Reg. 38053. Following that "elements-based" guidance, the appellant's offense would not be considered registerable.[10]

Given the Air Force Military Justice Division's published opinion, the language in the Military Judges' Benchbook, and the Attorney General's guidance, we cannot conclude that it was "clear" that the appellant would have to register as a sex offender under federal law if he pled guilty to the obscenity charges, as it was possible that plea would allow him to avoid registration.[11] Therefore, his counsel's advice that the appellant "may"

not have to register and that the military "may not" have to report his conviction to state authorities did not constitute deficient performance.

Lastly, the trial defense counsel told the appellant that even if the military did report his conviction to the states, each state would determine whether his conduct warranted registration under state law. That advice does not constitute deficient performance.

SORNA does impose certain specific requirements on the states. Upon receiving information from a sex offender, each state is required to place certain standard information into its sex offender registry, including a physical description and photograph of the offender, the text of the law he violated, his criminal history, his fingerprints, a DNA sample, and a photocopy of his driver's license. 42 U.S.C. § 16914(b). The States are also required to immediately share the information with other jurisdictions and with the Attorney General for placement in a new

in "tier I" (requiring registration for 15 years), and an offense of "production or distribution of child pornography" is a tier II offense (requiring lifetime registration). *See* 73 Fed.Reg. 38053.

**10.** This elements-based "categorical" approach is similar to the one used in some federal courts in evaluating potential sentence enhancement and similar statutes. There, courts "look only to the fact of conviction and the statutory definition of the prior offense," and not to the particular facts underlying those convictions. *James v. United States,* 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (internal quotation marks and citation omitted); *Chambers v. United States,* 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); *Keungne v. U.S. Attorney General,* 561 F.3d 1281, 1284 (11th Cir.2009) (using categorical approach in determining if an alien's conviction constituted a crime of moral turpitude). The Supreme Court has also endorsed a "modified-categorical" approach, which allow courts to consider facts that were found beyond a reasonable doubt in order to ascertain the circumstances of a defendant's offense. *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *Shepard v. United States,* 544 U.S. 13, 20, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (courts can consider the factual basis for the charge, shown by a transcript of the plea colloquy or written plea agreement presented to the court). This approach has been used by federal courts as they evaluate whether a convicted sex offender is required to register as a sex offender, including some who evaluated the same statute at issue in this case and found the

defendant's underlying conduct to require registration. All but one of those reported cases, however, were published after the appellant's conviction. *See United States v. Byun,* 539 F.3d 982, 993–94 (9th Cir.2008) (finding Congress intended a non-categorical approach as to the age of the victim in determining whether a registerable SORNA offense has occurred); *United States v. Becker,* 682 F.3d 1210, 1212–13 (9th Cir.2012) (finding a defendant's admissions at trial that he downloaded and possessed child pornography made his conviction under 18 U.S.C. § 1462 a registerable offense); *United States v. Kent,* 440 Fed.Appx. 580, 582 (9th Cir.2011) (finding underlying facts show his conviction under 18 U.S.C. 1462 was a sex offense against a minor and therefore registerable under SORNA); *United States v. Taylor,* 644 F.3d 573, 576 (7th Cir. 2011) (affirming a trial judge's decision to look at the charge sheet to assess whether a military offender's conviction for sodomy was covered by SORNA because Article 120, UCMJ, facially proscribes conduct that may not be within SORNA's scope); *United States v. Dodge,* 597 F.3d 1347, 1349 (11th Cir.2010) (en banc) (looked at facts of a defendant's misconduct to find his conviction registerable under SORNA).

**11.** This is corroborated by information on the Department of Justice website which states "In addition to facing imprisonment and fines, convicted offenders of federal obscenity laws involving minors *may* also be required to register as sex offenders." *See* http://www.justice.gov/criminal/ceos/citizensguide/citizensguide_obscenity.html (emphasis added).

comprehensive national sex-offender registry. 42 U.S.C. §§ 16919–921, 16913(e). Notably, these steps are to be taken by the state *after* the sex offender reports to state officials to register. There is no indication in SORNA or DoDI 1325.7 that a state *must* take such steps simply upon being notified by military or civilian confinement personnel that a sex offender will be moving into his jurisdiction, although Arkansas apparently did elect to do so in the appellant's case. Therefore, advising the appellant that it would be up to the individual state to decide what to do with such a military notification did not constitute deficient performance.

Based on the facts of this case, we hold the appellant has not met his burden of demonstrating that his trial defense counsel's performance was deficient, as required by the first prong of *Strickland.* As such, we do not reach the second prong about whether the appellant was prejudiced by his counsel's performance.

### Post–Trial Processing Delays

In *United States v. Moreno,* our superior court established guidelines that trigger a presumption of unreasonable delay in certain circumstances, including where appellate review is not completed within 18–months of docketing. 63 M.J. 129, 142 (C.A.A.F.2006). Furthermore, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers the service courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif,* 57 M.J. 219, 225 (C.A.A.F.2002). In a supplemental assignment of error that specifically states he is not raising a due process challenge to the timing of his appellate review, the appellant cites *Tardif* and argues that, because the appellate delay is facially unreasonable under the *Moreno* standards, we should grant relief to the appellant in the form of disapproval of the bad-conduct discharge. Having considered the totality of the circumstances and the entire record, we conclude that relief is not warranted. *United States v. Harvey,* 64 M.J. 13, 24 (C.A.A.F.2006); *Tardif,* 57 M.J. at 224.

### Conclusion

The findings and sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and the sentence are

AFFIRMED.